FILED IN CHAMBERS
U.S.D.C. Rome

OCT 03 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

JESSE WELDON,

    Plaintiff,

v.

BARTOW COUNTY BOARD OF
EDUCATION, et al.,

    Defendants.

CIVIL ACTION

NO. 4:06-CV-29-RLV

O R D E R

    This is an action pursuant to 28 U.S.C. § 1983, in which the plaintiff alleges that his civil rights were violated in several ways; he has also asserted state law claims for malicious prosecution, false arrest, false imprisonment, and intentional infliction of emotional distress. Pending before the court are (1) the Motion to Dismiss filed by Larry Graves and Don Thurman [Doc. No. 30], (2) the Motion to Dismiss filed by the Bartow County Board of Education, Lamar Grizzle, Diane Coker, and Tammy Livingood [Doc. No. 31], (3) the plaintiff's Motion to Amend Complaint [Doc. No. 34], (4) the defendants' Motion to Dismiss the Plaintiff's Amendment to his complaint [Doc. No. 35], (5) the plaintiff's Motion Requesting Court to Consider Plaintiff's 7/28/06 Brief in Opposition to Defendants' Motion to Dismiss [Doc. No. 41], and (6) the defendants' Motion to Stay Discovery [Doc. No. 48].

    In its order dated June 6, 2006, the court commented on how a relatively simple matter (a motion to set aside the clerk's entry of default) had generated an inordinate amount of paper. Since

that time the parties have continued to act in a matter that is not very flattering, with each side picking and choosing which rules should be strictly enforced and which should be viewed with leniency by the court, depending, of course, on who benefits by which interpretation. For example, Don Thurman filed an answer but then, in contravention of Rule 12, Federal Rules of Civil Procedure, also filed a motion to dismiss.[1] The plaintiff purported to file an amended complaint without obtaining court permission, even though an answer to a previously filed complaint had been served. Additionally, in his reply to the defendants' response to his motion for leave to file an amended complaint, the plaintiff argued that the defendants' motion to dismiss had been filed three days late; however, the plaintiff himself violated Local Rule 7.1D by filing a brief that was 44 pages long.

It is against this backdrop that the court proceeds to consider the pending motions.

## I. PROCEDURAL BACKGROUND

Before the court can rule on the various motions, it must first determine what issues are properly before the court. The plaintiff filed his original complaint on February 6, 2006. Before any answers had been served, the plaintiff filed an amended

---

[1] Recognizing that such a motion was improper, Thurman invited the court to treat his motion to dismiss as a "partial motion for judgment on the pleadings." See Motion to Dismiss of Defendants Larry Graves and Don Thurman at 1, n.1.

complaint on April 4, 2006. By order dated June 6, 2006, this court noted that the amended complaint was a shotgun pleading and directed the plaintiff to file an amended and recast complaint. The plaintiff filed that amended and recast complaint on June 25.[2] On July 14, Thurman filed an answer; on the same day, he and the other defendants filed motions to dismiss. On July 28, the plaintiff purported to file an amendment to his complaint and also moved for permission to file that amendment.

Rule 15(a), Federal Rules of Civil Procedure, provides in relevant part: "A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

In the instant case, the plaintiff amended his complaint as a matter of right on April 4, 2006. Thus, any further amendment could be done only with court permission or by consent of the defendants. On June 6, the court gave permission for the plaintiff to file such an amended complaint (and, in fact, ordered the plaintiff to do so). Therefore, the purported filing of another

---

[2] That complaint still did not fully comply with the dictates discussed in Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293 (11th Cir. 2002), and Byrne v. Nezhat, 261 F.3d 1075, 1128-34 (11th Cir.2001), for example, the amended and recast complaint continued to incorporate the preceding counts in each successive count and continued to refer generally to "defendants" instead of identifying the particular defendant alleged to have committed a particular tort.

amendment on July 28 was improper, and that amendment is hereby STRICKEN.

However, since the plaintiff has also sought permission to file that amendment, the court must now determine whether to grant such permission. Although Rule 15(a) provides that leave to amend should be freely given, such leave is not automatic. The Eleventh Circuit has noted the "great discretion" enjoyed by the district court in considering whether to allow an amendment following the filing of responsive pleadings. Lowe's Home Centers, Inc. v. Olin Corp., 313 F.3d 1307, 1315 (11th Cir. 2002). In *Lowe's* the Eleventh Circuit observed that it was not an abuse of discretion to deny a motion for leave to amend when the proposed amendment was designed to avoid a pending summary judgment motion. Although the motions pending in the case *sub judice* are to dismiss, not for summary judgment, the rationale is the same.

The plaintiff has already presented three complaints to this court, and there is nothing to indicate that the facts alleged in the proposed third amended complaint were unknown to the plaintiff at the time he filed his earlier complaints. When instituting a lawsuit, a plaintiff and his counsel have an obligation to exercise due diligence in identifying the facts necessary to support the legal claims asserted in the complaint. A defendant is prejudiced when after identifying flaws in a plaintiff's complaint, the plaintiff is then allowed to amend his complaint to assert new facts that were previously known to him. Allowing such reactive

4

filings would provide a major disincentive for a defendant to pursue early resolution of a case through a motion to dismiss, motion for judgment on the pleadings, or a motion for summary judgment.

The court is aware that the Eleventh Circuit has stated that ordinarily a plaintiff must be given at least one opportunity to amend his complaint before the court dismisses that complaint, *see, e.g.,* Corsello v. Lincare, Inc., 428 F.3d 1008 (11th Cir. 2005); however, the court does not believe that such directive is applicable when a plaintiff has had three other complaints before the court and has not stated a reason for failing to include the new factual allegations in those prior complaints.

For the foregoing reasons, the court finds that the plaintiff's request to file a third amended complaint is dilatory, and the court hereby DENIES his motion for leave to amend. *See* Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227 (1962) (dilatory motive on the part of the movant is sufficient ground for denying motion for leave to amend). The defendants' motion to dismiss the amended complaint is DISMISSED because of mootness.

Having determined that the proper complaint before the court is the one filed on June 25, 2006, the court now moves to the pending motions relating to that complaint.

II. FACTUAL BACKGROUND

Because this case is before the court upon the defendants' motions to dismiss,[3] the court's recitation of the facts are drawn from the plaintiff's complaint, which, for purposes of the pending motions, are deemed true and which this court construes in a light most favorable to him. *See* Simmons v. Sonyika, 394 F.3d 1335 (11th Cir. 2004).

Sometime prior to February 11, 2004, the plaintiff sent an Open Records Request to the Bartow County Board of Education. On February 9, 2004, the Board of Education held a public meeting, and the plaintiff filled out a Bartow County Board of Education Public Participation form, indicating that he wished to speak at the meeting about corruption in the school system. After filling out the form, the plaintiff was approved to speak, and he did speak for about a minute. The plaintiff then departed the meeting, without incident.

During the meeting, Don Thurman, employed by the Board of Education as a police officer, requested that Board members Tammy Livingood and Diane Coker make notes of what the plaintiff said at the meeting, and they did so.

On February 11, Thurman swore out warrants for the plaintiff, charging him with criminal defamation, in violation of O.C.G.A. §

---

[3] The court will treat Thurman's motion to dismiss as a motion for partial judgment on the pleadings (as he has suggested in that motion), since little purpose would be served in requiring Thurman to refile that motion with another caption.

16-11-40. Subsequently, Thurman and Larry Graves assisted in the arrest, search, and incarceration of the plaintiff.

When the plaintiff was released on bond, he was prohibited from having any contact with the Board members Livingood and Coker and was forbidden to enter any school property; he contends that this restriction was for the purpose of harassing, intimidating, deterring him from exercising his First Amendment rights and was in retaliation for making Open Records Requests. The defendants also disseminated through a press release about his arrest, also for the alleged purpose of chilling the exercise of the plaintiff's constitutional rights.

On September 1, 2004, Thurman, Livingood, and Coker attended the preliminary hearing and provided testimony in support of the charges against the plaintiff. However, they were informed that the Georgia Supreme Court had declared that statute to be unconstitutional. The charges were then dismissed.[4] On February 6, 2006, the plaintiff instituted the instant lawsuit.

---

[4] In paragraphs 19 and 49 of the amended complaint, the plaintiff alleges that the charges were "dismissed"; in paragraph 53, he alleges that the charges were "no billed." Regards of how the charges were disposed of, it is undisputed that the proceedings were terminated in the plaintiff's favor. *See* Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994).

### III. LEGAL DISCUSSION

#### A. Federal Claims

As an initial matter, the court notes that the plaintiff sued the individual defendants in their individual and official capacities and also sued the Bartow County Board of Education. Suing these individuals in their official capacity shows a basic misunderstanding of a person's "official capacity." "Official capacity" is not the same as "agent," or "employee." Instead, a suit against a person in his official capacity is simply an action against the governmental entity itself. Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099 (1985). In that case the Supreme Court noted that there was a difference between official capacity lawsuits and individual (or personal) capacity lawsuits and went on to state, "Because this distinction apparently continues to confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal and official capacity actions." 473 U.S. at 164, 105n S.Ct. at 3105. The Court then clearly and definitively stated:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky*, 473 U.S. at 165-66, 105 S.Ct. at 3105.

The plaintiff in the instant action completely ignored the Supreme Court's teaching in *Kentucky v. Graham* and sued the Bartow County Board of Education *and* also sued the individual defendants in their official capacities. Suing the individual defendants in their official capacities was totally unnecessary, as the Supreme Court pointed out over 20 years ago. Consequently, the federal claims against the individual defendants in their official capacities are dismissed without prejudice.[5]

With respect to claims under 42 U.S.C. § 1983 against a government entity, the *Kentucky v. Graham* court also reiterated that such liability could not be predicated on the theory of respondeat superior but that the entity itself had a policy or custom that played a role in the violation of federal law. *See also* Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978): Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427 (1985). Nowhere in the plaintiff's complaint does he allege that the Bartow County Board of Education had a custom or policy that played a role in the violations of federal law asserted in his lawsuit. Consequently, the plaintiff's federal claims against the Bartow County Board of Education are DISMISSED.

---

[5] The dismissal is without prejudice since it is not an adjudication on the merits; the plaintiff's federal claim against the Bartow County Board of Education is, therefore, not affected by this dismissal.

The defendants, in their individual capacities, have moved to dismiss the plaintiff's section 1983 claims on the basis that they are entitled to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).[6] "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id*.

The United States Supreme Court has set forth a two part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002); *see also* Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established,

---

[6] In the instant case, the parties do not dispute that the individual defendants were acting within the course and scope of their discretionary authority with respect to the actions they took.

10

there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established." *Vinyard*, 311 F.3d at 1346 quoting *Saucier*, 533 U.S. at 201. Thus, the court must first analyze whether the defendants' conduct, taken in the light most favorable to the plaintiff, violated his constitutional rights.

In order to arrest, an officer must demonstrate probable cause for the arrest. However, in the context of qualified immunity from a section 1983 claim, the police officer need not have actual probable cause but need only to have "arguable probable cause." Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999). "Because only arguable probable cause is needed, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).

In the case *sub judice*, Thurman has not moved to dismiss the plaintiff's Fourth Amendment claim against him. He concedes that because the statute under which he arrested the plaintiff had been declared unconstitutional, he lacked arguable probable cause to arrest the plaintiff. With respect to Graves, however, the plaintiff alleges only that he "assisted in the arrested [*sic*],

11

search, and incarceration of Plaintiff."  Complaint at ¶ 17.[7] There is no allegation that Graves played any role in obtaining the warrant.

Because Graves' actions were predicated upon his reliance upon a facially valid warrant, this court holds that he had arguable probable cause to assist in the plaintiff's arrest. Because Graves had arguable probable cause, he is entitled to have the plaintiff's Fourth Amendment claim against him dismissed.

In its June 6, 2006, order the court cautioned the plaintiff against the shotgun pleading technique of referring to "defendants" generally in his complaint; despite this caution, the plaintiff continued that practice in his amended complaint.  Thus, his Fourth Amendment would appear to encompass the members of the school board also.  However, the only specific allegation against Coker and Livingood are that they took notes at the Board meeting at Thurman's request and that they attended the plaintiff's preliminary hearing and offered testimony.  With respect to Grizzle, the court notes that he is mentioned by name only twice in the plaintiff's complaint and that is in paragraph 4, where he is identified as Chairman of the Board of Education and where his address is given for purposes of service.

This court holds that the mere act of taking notes at a Board meeting and subsequently testifying at a preliminary hearing fail

---

[7] That paragraph actually refers to "Defendant Grimes"; the court assumes that this was a typographical error.

12

to state a claim for the violation of any federal law.[8] As suggested by the Eleventh Circuit in the cases condemning shotgun pleading, the court will not allow "vague and ambiguous" references in the complaint as to how "defendants" violated his constitutional rights through retaliation, arrest, and imposition of bond conditions to substitute for precise allegations that would allow each defendant to know the specific charges against him. *See* Magluta v. Samples, 256 F.3d 1282 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."). Moreover, the conclusory allegations regarding the alleged violations of federal law are not grounded in the factual allegations made in the complaint.

Because the court concludes that the plaintiff has failed (except through shotgun, conclusory pleadings) to allege facts to show that any defendant, other than Thurman, violated any of his federal civil rights, all of the plaintiff's federal claims, except his Fourth Amendment claim against Thurman, are DISMISSED.

B. State Claims

---

[8] Any testimony given at the preliminary hearing cannot form the basis of any liability since witnesses in judicial proceedings have absolute immunity from civil liability for their testimony. Scarbrough v. Myles, 245 F.3d 1299 (11th Cir. 2001).

In his response to the defendants' motion to dismiss his state law claims the plaintiff does not contend that the Bartow County Board of Education and the defendants in their official capacities are not entitled to sovereign immunity. Consequently, the court hereby DISMISSES all of the plaintiff's state law claims asserted against the Bartow County Board of Education and the defendants in their official capacities.

To the extent that the plaintiff asserts state law claims against the defendants in their individual capacities, those claims are subject to dismissal, since the defendants are entitled to official immunity under Georgia law. Art. I, § II, ¶ IX(d) of the Georgia Constitution provides for official immunity:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

In Merrow v. Hawkins, 266 Ga. 390 (1996), the Georgia Supreme Court held that in the context of official immunity, "actual malice" requires a deliberate intention to do wrong. "Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual

14

situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." Adams v. Hazelwood, 271 Ga. 414, 415 (1999).

This immunity is available to public officials acting in the course of their discretionary capacities. Gilbert v. Richardson, 264 Ga. 744 (1994). This court holds that the individual defendants were acting in the course of their discretionary when they performed all of the acts alleged in the complaint. The court further holds that the actions as pled do not show that degree of actual malice required to pierce official immunity. It is true that the plaintiff pled in conclusory (and shotgun) form that the defendants acted with such malice. However, the *facts* that were actually pled fall far short of showing the actual malice required by the Georgia Supreme Court.

## IV. SUMMARY

The Motion to Dismiss filed by Larry Graves and Don Thurman [Doc. No. 30] is DENIED with respect to the plaintiff's Fourth Amendment claim against Thurman but in all other respects is GRANTED; the Motion to Dismiss filed by the Bartow County Board of Education, Lamar Grizzle, Diane Coker, and Tammy Livingood [Doc. No. 31] is GRANTED; the plaintiff's Motion to Amend Complaint [Doc. No. 34] is DENIED; the defendants' Motion to Dismiss the Plaintiff's Amendment to his complaint [Doc. No. 35] is DISMISSED

as moot; the plaintiff's Motion Requesting Court to Consider Plaintiff's 7/28/06 Brief in Opposition to Defendants' Motion to Dismiss [Doc. No. 41] is GRANTED; and the defendants' Motion to Stay Discovery [Doc. No. 48] is DISMISSED as moot.

SO ORDERED, this **3rd** day of October, 2006.

                                                           */s/ Robert L. Vining, Jr.*
                                                           ROBERT L. VINING, JR.
                                                           Senior United States District Judge